**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
KHALANI IESHA ALI,            )
                              )
        Plaintiff,            )
                              )
    v.                        )    Case No. 14-cv-230 (EGS)
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner           )
of Social Security,           )
                              )
        Defendant.            )
                              )
                              )
_____)
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Khalani Iesha Ali ("Ms. Ali") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying in part her claims for Social Security Disability Benefits and Supplemental Security Income Benefits. Pending before the Court are Ms. Ali's Motion for Judgment of Reversal and the Commissioner's Motion for Judgment of Affirmance. ECF Nos. 10, 13. Upon consideration of the parties' submissions, the administrative record, the governing statutory and case law, and for the following reasons, Ms. Ali's Motion is **DENIED** and the Commissioner's Motion is **GRANTED**.

I.    BACKGROUND

A. Factual Background

Khalani Iesha Ali, born August 25, 1968, is a former retail manager seeking Social Security Disability Benefits ("SSD") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 301 *et. seq.* ("the Act"). In November 2000, Ms. Ali suffered a gunshot wound to her shoulder following a burglary of her home. AR at 333. In December 2008, Ms. Ali began receiving treatment for anxiety and migraines, among other ailments. *Id*. at 339. By January 2009, Ms. Ali had reported to her doctor that she experienced constant anxiety which interfered with her life and prevented her from interviewing for new jobs. *Id*. at 329. In March 2009, Ms. Ali was evaluated for depression and hypomania and diagnosed with bipolar II disorder. *Id*. at 333. During this time, Ms. Ali became increasingly paranoid that someone would break into her apartment and hurt her again. *Id*. Ms. Ali periodically suffered from racing thoughts, uncontrollable crying, poor attention and concentration, and frequent angry outbursts. *Id*. By April 2009, Ms. Ali had returned to work as a store manager. *Id*. at 335. In April 2010, however, Ms. Ali received a letter from the Victims Against Violent Crimes Program informing her that her assailant would be released from prison in 2015. Ms. Ali stopped working on April 15, 2010 as she became increasingly confused and unable

2

to handle stress at her job. *Id.* at 323. In March 2012, Ms. Ali began seeing a psychologist and a psychiatrist. *Id.* Ms. Ali's reports of crying spells and insomnia prompted her psychologist to diagnose her with generalized anxiety disorder and post-traumatic stress disorder. *Id.* at 499.

Ms. Ali's mental condition continued to decline. A March 6, 2012 mental status examination revealed that Ms. Ali experienced hypervigilant behavior, a sad, weeping, and labile affect, preoccupation with her attacker's return, poor concentration, poor social judgment, and poor insight. *Id.* at 327-28. On April 3, 2012, Ms. Ali was evaluated by a psychiatrist who also diagnosed Ms. Ali with post-traumatic stress disorder and bipolar affective disorder. *Id.* at 672-76. Throughout 2012 and 2013, Ms. Ali reported to her physicians that she was "reliving the shooting from 2000" and suffering from insomnia because she saw the gun when she closed her eyes. *Id.* at 588. On April 17, 2012, Ms. Ali's treating psychologist, Dr. Ruth Graves, stated in a letter that Ms. Ali suffered an "emotional setback" in April 2010 after receiving the letter about her assailant's release date and that Ms. Ali has been unable to work due to psychological symptoms. *Id.* at 383. Dr. Graves recommended that Ms. Ali not return to work for at least one year until the symptoms abated. *Id.* On April 24, 2012, Ms. Ali's treating psychiatrist, Dr. Tanya Alim, drafted a letter in support of Dr.

Graves' opinion, also recommending that Ms. Ali not return to work for one year. *Id*. at 385. On October 10, 2012, Ms. Ali's treating physician, Dr. Billie Downing, opined that Ms. Ali required "at least 1 year in intensive services" that would prohibit her from working during that time. AR at 468. In May and July 2013, Ms. Ali's physicians diagnosed her with severe post-traumatic stress disorder and severe bipolar disorder. *Id*. at 678.

### B. Procedural History

On January 23, 2012, Ms. Ali filed applications for Social Security Disability Benefits ("SSD") and Supplemental Security Income Benefits ("SSI") alleging a disability onset date of April 15, 2010 – *i.e.*, the date on which she stopped working. AR at 54, 64, 174-208. Ms. Ali's claims were denied after initial review and again upon reconsideration because the Commission determined that her condition was not so severe as to prevent Ms. Ali from working. *Id*. at 102-105, 108-114. On September 19, 2013, an administrative law judge ("ALJ") issued a partially favorable decision finding that Ms. Ali was disabled beginning on March 1, 2012 but not before. *Id*. at 13-31. *Id*. The ALJ based his decision on a consideration of Ms. Ali's medical records, the opinions of her treating physicians, the evaluations of State Agency consultants, and the testimony of a vocational expert who opined that prior to March 1, 2012, Ms. Ali could

4

have found a job as an assembly worker, a packaging worker, a
quality control worker, or a small parts inserter. *Id.* at 17-25.
Due to the ALJ's decision, Ms. Ali has been receiving disability
insurance since March 1, 2012. On November 29, 2013, Ms. Ali
sought review from the Appeals Council of the portion of the
ALJ's decision that found her not disabled between April 2010
and March 2012. On December 20, 2013, the Appeals Council denied
review, which decision is the subject of this action for
judicial review. *Id.* at 1-5.

### II.   LEGAL FRAMEWORK

#### A. Standard of Review

Section 405(g) of the Social Security Act provides for
judicial review of "final decisions" of the Commissioner of
Social Security. 42 U.S.C. § 405(g). On review, the court must
uphold the Commissioner's determination where it is "supported
by substantial evidence" and "not tainted by an error of law."
*Porter v. Colvin*, 951 F. Supp. 2d 125, 129 (D.D.C. 2013) (citing
*Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)).
Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." *Brown v.
Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986) (quoting *Richardson v.
Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence
test "requires more than a scintilla, but can be satisfied by
something less than a preponderance of the evidence." *Butler v.*

*Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting *Florida Mun. Power Agency v. F.E.R.C.*, 315 F.3d 362, 366 (D.C. Cir. 2003)). This standard "entails a degree of deference to the Commissioner's decision." *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 33 (D.D.C. 2002).

"Even if supported by substantial evidence, however, the court will not uphold the Commissioner's findings if the Commissioner reached them by applying an erroneous legal standard." *Id.; see also Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). To determine whether the Commissioner's decision is free from legal error and supported by substantial evidence, the court must "carefully scrutinize the entire record," but "may not reweigh the evidence and replace the [Commissioner's] judgment regarding the weight of the evidence with its own." *Jackson*, 271 F. Supp. 2d at 34 (citing *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

## B. The Social Security Act

To qualify for disability benefits under Title II, the Commissioner must find that the applicant has a "disability" as defined in the Act. *See* 20 C.F.R. § 404.315. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The same definition of "disability" is used to determine eligibility for SSI benefits under Title XVI. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.905.

The Commissioner has established a five-step sequential evaluation process for assessing a claimant's alleged disability. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during the first four steps. *Id*. First, the claimant must demonstrate that she is not presently engaged in "substantial gainful work." 20 C.F.R. § 416.920(b). Second, a claimant must show that she has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic activities." 20 C.F.R. § 416.920(c). Third, if the claimant suffers from an impairment that meets or equals an impairment listed in Appendix 1 to the Commissioner's

regulations, she is deemed disabled, and the inquiry ends. 20
C.F.R. § 416.920(d).

If the impairment is not one the regulations presumed to be
disabling, however, then the evaluation continues to a fourth
step, which requires the claimant to show that she is incapable
of performing work that she has done in the past. 20 C.F.R. §
416.920(e). Once the claimant has carried her burden on the
first four steps, the burden shifts to the Commissioner on step
five to demonstrate that the claimant is able to perform "other
work" based on a consideration of her "residual functional
capacity" ("RFC"), age, education and past work experience. 20
C.F.R. § 416.920(f); *see also Brown*, 794 F.2d at 706; *Davis v.
Astrue*, 602 F. Supp. 2d 214, 217 (D.D.C. 2009).

### III. DISCUSSION

#### A. The Commissioner's Decision

In this case, the Commissioner, through the ALJ, applied
the five-step analysis and determined, first that Ms. Ali had
not engaged in substantial gainful activity since her alleged
onset date of April 15, 2010. AR at 19. At step two, the ALJ
found, based on the objective medical evidence, that Ms. Ali's
anxiety disorder and affective disorder were severe impairments.
*Id*. At step three, the ALJ found that Ms. Ali's impairments did
not meet or equal any of the impairments listed in 20 C.F.R.
Part 404, Subpart P Appendix 1, specifically considering the

mental disorder listings. *Id.* at 20. At step four, the ALJ determined that prior to March 1, 2012, Ms. Ali had the residual functional capacity "to perform a full range of work at all exertional levels, but [was] limited to performing tasks with simple instructions (no complex tasks) with occasional contact with co-workers, supervisors, and the public[.]" *Id.* Due to Ms. Ali's concentration and focus problems, the ALJ found that Ms. Ali "would be off task 5% of the workday." *Id.* The vocational expert determined that Ms. Ali would be able to work as an assembly worker, a packaging worker, a quality control worker, and a small parts inserter. *Id.* at 24. The expert testified that approximately 700 assembly worker, 600 packaging worker, 500 quality control worker, and 400 small parts inserter jobs were available in Ms. Ali's area. *Id.* Based on a consideration of the objective medical evidence and the information provided by the vocational expert, the ALJ determined that prior to March 1, 2012, Ms. Ali could have successfully adjusted to work that existed in significant numbers in the national economy, and that therefore she was not "disabled" under the Act. *Id.* at 24-25.

Here, Ms. Ali does not challenge the ALJ's determination that she was disabled as of March 1, 2012. However, Ms. Ali argues that the ALJ should have relied on the opinions of her treating physicians to determine that her disability onset date was two years earlier — *i.e.*, on April 15, 2010. Pl.'s Mot., ECF

No. 10 at 13-14. According to Ms. Ali, the ALJ failed to give the opinions of her treating physicians controlling weight and, as a result, improperly determined Ms. Ali's disability onset date. *Id.*

Ms. Ali also contends that the ALJ improperly evaluated her credibility because the ALJ focused his credibility assessment on two facts: 1) that prior to March 1, 2012, Ms. Ali did not obtain treatment with a specialist; and 2) that Ms. Ali was, at times, non-compliant with her prescribed psychotropic medications. *Id.* at 20. The ALJ overlooked, Ms. Ali argues, the fact that non-compliance with mental health treatment is often a symptom of a psychiatric condition rather than an indication of the severity of the impairments. *Id.* The Commissioner refutes both claims, arguing that the ALJ properly weighed the opinions of Ms. Ali's treating physicians and evaluated Ms. Ali's credibility. Opp., ECF No. 13 at 12-19. The Court will examine each of Ms. Ali's claims in turn.

### B. The ALJ did not err in weighing the medical opinions from Ms. Ali's treating physicians.

Ms. Ali contends that the ALJ erroneously failed to give sufficient weight to the opinions from her treating psychologist, Dr. Graves, and treating psychiatrist, Dr. Alim, in determining her disability onset date. *See* Pl.'s Mot., ECF No. 10 at 13. According to Ms. Ali, the ALJ should have given the opinions of Drs. Graves, Downing and Alim "controlling

weight" because they are treating sources. *Id.* at 13-15. Ms. Ali also argues that the ALJ failed to properly consider the retrospective opinions from these treating sources. *Id.* at 15-16. Ms. Ali emphasizes that Drs. Alim and Downing specifically indicated that her disabling psychiatric impairments began prior to March 1, 2012, and contends that evidence from before March 1, 2012 is consistent with the abnormalities identified by these doctors. *Id.* at 16. Ms. Ali claims that the opinions of Drs. Graves, Alim, and Downing are well-supported, and that adverse findings from non-examining consultants alone are not sufficient to override the opinions from her treating sources. *Id.* at 18.

The Commissioner counters that the objective medical evidence in the record fails to demonstrate that Ms. Ali became disabled before March 1, 2012. Opp., ECF No. 13 at 16. In support of this claim, the Commissioner notes that the medical findings prior to March 2012 demonstrate that Ms. Ali was doing well, did not consistently seek treatment or take medication, and sought a new job. *Id.* Further, the Commissioner emphasizes that by January 2011, Ms. Ali had stopped seeing her psychiatrist and treated her symptoms with meditation. *Id.* Finally, the Commissioner argues that Ms. Ali failed to carry her burden to overcome the objective medical evidence suggesting that Ms. Ali's impairments did not become disabling until March 1, 2012. *Id.*

Under the applicable regulations, a treating physician's medical opinion is entitled to "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial record evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Butler*, 353 F.3d at 1003 ("Because a claimant's treating physicians have great familiarity with her condition, their reports must be accorded substantial weight."); *id.* ("A treating physician's [opinion] is binding on the fact-finder unless contradicted by substantial evidence."). The opinion of a treating physician is not afforded controlling weight where the physician issues an opinion that is not consistent with other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2nd Cir. 2002). An ALJ must provide "good reasons" for the weight it gives to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *5 (July 2, 1996). If the ALJ "rejects the opinion of a treating physician [he must] explain his reasons for doing so." *Butler*, 353 F.3d at 1003. (citation omitted). The ALJ's reasons must be "sufficiently specific to make clear to [the court]" why the ALJ gave it that weight. SSR 96-2, 1996 WL 374188 at *5.

Here, the ALJ provided a clear explanation for the weight he gave to the medical opinions of Ms. Ali's treating

physicians. The ALJ granted "great weight" to the opinions of Ms. Ali's treating physicians for the period during which they treated Ms. Ali because they "c[ame] from a treating source[.]" AR at 22-23. As a practical matter, the ALJ effectively granted controlling weight to the treating physicians' opinions for this period as the ALJ ultimately determined that Ms. Ali was disabled once treatment began. *Id*. During the period before Ms. Ali began treatment, the ALJ gave the treating physicians' opinions "some weight because they originated from treating sources." *Id*. at 22. The ALJ specifically explained that he did not grant controlling weight to the portions of the medical opinions addressing Ms. Ali's condition before treatment began because they "d[id] not correspond to the treatment record." *Id*. Instead, for Ms. Ali's pre-treatment period, the ALJ assessed the entire record, including the treating physicians' opinions, the opinions of State Agency consultants, and Ms. Ali's medical records. *See id*. at 17-25.

An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider a number of factors to determine how much weight to give the opinion, including: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the evidence that supports the treating physician's report; 4) how consistent the treating

source's opinion is with the record as a whole; 5) the specialization of the source in contrast to the condition being treated; and 6) any other significant factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In refusing to give controlling weight to the medical opinions of Ms. Ali's treating physicians regarding the period during which they did not treat Ms. Ali, the ALJ clearly considered these factors. *See* AR at 21-22. For instance, when assessing the length, nature and extent of the treatment relationship, the ALJ explained that Drs. Grave and Alim did not treat Ms. Ali before March 1, 2012. *Id*. When examining the evidence that supports the physicians' report and assessing how consistent the medical opinions are with the entire record, the ALJ identified specific portions of Ms. Ali's medical records that were inconsistent with the treating sources' opinions. *Id*. While Drs. Grave and Alim indicated that Ms. Ali experienced an "emotional setback" in April 2010 after receiving a letter informing Ms. Ali of her assailant's anticipated release date, Ms. Ali's medical records during this period indicate that she was not taking any psychological medications, had not reported a mood disorder, had not visited a psychiatrist, and had declared "life is good". *Id*. Further evidence in the record supports the ALJ's determination. For example, the Residual Functional Capacity report notes that on January 4, 2011, Ms. Ali exhibited "[n]o depression and no

14

insomnia." *Id*. at 61, 66, 71, 85. The Court is thus satisfied that substantial evidence exists to support the ALJ's determination. *See Butler*, 353 F.3d at 999 (recognizing that the substantial evidence test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence"). Moreover, the ALJ clearly explained his reasons for declining to grant controlling weight to the pre-treatment portions of the treating physicians' opinions, detailing the contradictory evidence in the record. *Id*. at 1003 (reasoning that if the ALJ "rejects the opinion of a treating physician [he must] explain his reasons for doing so").

Contrary to Ms. Ali's assertion, the ALJ did not fail to consider the retrospective opinions from Ms. Ali's treating sources. *See* Pl.'s Mot., ECF No. 10 at 16. While courts have recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment, *see, e.g.*, *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987), greater weight is given to such opinions when there is no contradictory expert or medical evidence. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (reasoning that retrospective diagnoses must be "considered in light of the entire record"). As described above, in not giving controlling weight to the letters of Drs. Graves and Alim — which indicated

15

that Ms. Ali experienced an emotional setback in April 2010 —
the ALJ analyzed Ms. Ali's medical records and the opinions of
State Agency consultants which contradicted the physicians'
retroactive assessments. To be clear, the ALJ did not disregard
the physicians' assessments, but granted them "some weight" as
opposed to controlling weight. Because of the contradictory
evidence in the record concerning the period before Drs. Alim
and Graves began treating Ms. Ali, the Court finds that the ALJ
did not err in weighing the evidence accordingly. *See Plummer v.
Apfel*, 186 F.3d 422 (3d Cir. 1999) (reasoning that where there
is contradictory medical evidence, an ALJ "may reject a treating
physician's opinion outright" or "may afford [that] opinion more
or less weight depending upon the extent to which supporting
explanations are provided.").

Even if this Court might have reached a different
conclusion had it independently balanced the evidence, the Court
recognizes that it "may not reweigh the evidence presented to it
when reviewing a disability claim...nor may it replace the
Secretary's judgment concerning the weight and validity of the
evidence with its own." *Heckler*, 566 F. Supp. at 1195. If
supported by substantial evidence, as is the case here, the
Commissioner's finding must be sustained. *Smith*, 826 F.2d at
1121.

**C. The ALJ properly evaluated Ms. Ali's credibility.**

The ALJ determined that Ms. Ali's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found her statements "concerning the intensity, persistence, and limiting effects of her symptoms...not entirely credible prior to March 1, 2012." AR at 21. Ms. Ali argues that the ALJ failed to properly evaluate her credibility, asserting that the ALJ focused his credibility analysis almost entirely on the fact that prior to March 1 2012, Plaintiff did not obtain treatment with a specialist and was at times non-compliant with her prescribed psychotropic medications. Pl.'s Mot., ECF No. 10 at 20. According to Ms. Ali, the ALJ ignored the fact that non-compliance with mental health treatment can be a symptom of the psychiatric condition itself rather than an indication of the severity of the impairments. *Id*. Ms. Ali insists that her statement from her medical records that she was "doing well" before March 1, 2012 does not necessarily mean she was not disabled. *Id*. at 21.

The Commissioner argues that the ALJ properly assessed Plaintiff's credibility, citing to 20 C.F.R. §§ 404.1529(a), 416.929(a) which require an ALJ to consider the extent to which a claimant's symptoms could reasonably be accepted as consistent with the objective medical evidence. Opp., ECF No. 13 at 17.

Under the Social Security Act, a claimant's "statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, the claimant must also furnish objective medical evidence of the symptoms established by medically acceptable clinical or laboratory techniques. *Id*. A plaintiff's allegations of pain and functional limitations are "entitled to great weight where...it is supported by objective medical evidence." *See Baker v. Comm'r of Soc. Sec'y*, 2015 WL 7574467, *5 (N.D.N.Y. Nov. 3, 2015) (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)). If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996).[1]

ALJs follow a two-step process for evaluating a claimant's symptoms. *Id.; see also Porter*, 951 F. Supp. 2d at 134 ("Non-compliance with SSR 96-7p['s two-step process] warrants reversal of a decision of the ALJ, even if evidence suggests his conclusions are ultimately correct."). First, the ALJ determines

---

[1] Although SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016, the Commissioner is not authorized to issue a rule that applies retroactively to claims filed before the rule's effective date. *See Portlock v. Barnhart*, 208 F. Supp. 2d 451 (D. Del. 2002). As a result, 96-7p is still instructive for the instant case.

whether there is objective medical evidence demonstrating the existence of a medical impairment that could reasonably be expected to produce the symptoms alleged. SSR 96-7p, 1996 WL 374186, *2. Second, if there is such evidence, the ALJ evaluates the intensity and persistence of Plaintiff's symptoms and the extent to which they affect her ability to work. *Id*. As part of the second step, the ALJ must make a detailed credibility determination as to the claimant's statements regarding the intensity, persistence, or functionally limiting effects of the symptoms. *Id*. The ALJ must provide specific reasons for his or her finding on credibility, supported by the evidence in the case record. *Id*. In addition to the objective medical evidence, the ALJ must consider: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.; see also* 20 C.F.R. §§ 404.1529(a),

416.929(a). An ALJ "is not required to accept [a claimant's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [claimant's] testimony in light of the other evidence in the record." *Baker*, 2015 WL 7574467, at *5. If an ALJ "discredits [a claimant's] subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The Court is of the opinion that substantial evidence supports the ALJ's decision to discount the segments of Ms. Ali's testimony as they related to the time period prior to March 1, 2012. During this time period, Ms. Ali complained of disabling anxiety, confusion, and depression. AR at 21. The ALJ concluded, however, that Ms. Ali's complaints were inconsistent with the objective medical evidence prior to March 1, 2012. As detailed above, the ALJ cited to specific evidence in the record that indicated that between April 2010 and March 2012, Ms. Ali had not visited her psychologist, stopped taking psychological medications, stated that "life is good", and when asked repeatedly, reported no mood disorder. *Id*. Further, the ALJ considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) to reach his conclusion. Specifically, the ALJ noted that before March 1, 2012, Ms. Ali's daily activities included "personal care, preparing meals, house and yard work,

shopping by mail and computer, handling money, watching TV and reading." *Id.* at 20. The ALJ also chronicled the progression of Ms. Ali's medical conditions, describing her treatment regimen and noting that her symptoms were exacerbated in March 2012. *Id.* at 20-22. Ms. Ali argues that the ALJ improperly ignored the fact that non-compliance with mental health treatment may be a symptom of the psychiatric condition rather than an indication of the severity of the impairment. *See* Pl.'s Mot., ECF No. 10 at 20. Ms. Ali, however, fails to allege that *she* declined treatment and medication because of her impairment. On balance, even if Ms. Ali had alleged that to be the case, the Court's decision would not change. As explained herein, the ALJ considered the entire medical record when rendering his decision — Ms. Ali's lack of treatment was but one of a number of factors. *See* AR at 21 (detailing Ms. Ali's statement that "life is good" and repeated reports of no mood disorder).

To be clear, the ALJ did not completely discount Ms. Ali's testimony. The ALJ found Ms. Ali's allegations regarding her symptoms and limitations beginning on March 1, 2012 to be generally credible. *Id.* at 22. The ALJ based this determination on medical records demonstrating that in March 2012, Ms. Ali began seeing a psychologist on a weekly basis. *Id.* Beginning around the same period, Ms. Ali's physicians diagnosed her with a mental disorder with pressured speech, hypervigilance, sad

affect, and hallucinations when not on medications. *Id*. The ALJ further found that, after March 1, 2012, Ms. Ali's abilities were unduly strained due to unresolved issues surrounding her traumatic experience. *Id*. Around this time, the ALJ noted, Ms. Ali's "insight and prognosis were both poor." AR at 22. By May 2013, Ms. Ali's psychiatrist stated that Ms. Ali's diagnosis was poor due to chronic relapsing episodes. *Id*.

In sum, the record indicates that the ALJ articulated specific reasons for the weight he gave to Ms. Ali's subjective testimony based upon a consideration of the objective medical evidence. *See Wilson*, 284 F.3d at 1225. For these reasons, and for all of the reasons that the ALJ's weighing of the medical opinions from Ms. Ali's treating physicians is appropriate, the Court finds the ALJ's credibility determination to be supported by substantial evidence.

**IV.   CONCLUSION**

For the foregoing reasons, Ms. Ali's motion for judgment of reversal is **DENIED**. The Commissioner's motion for judgment of affirmance is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion, filed this same day.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **February 21, 2017**

22